# IN THE COURT OF APPEALS OF IOWA

No. 23-1127
Filed December 6, 2023

**IN THE INTEREST OF J.R., A.R., and L.R.,**
**Minor Children,**

**S.R., Mother,**
        Petitioner-Appellee,

**C.W., Father,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dickinson County, Shawna L.

Ditsworth, District Associate Judge.

        A father appeals the private termination of his parental rights. **AFFIRMED.**

        Pamela Wingert of Wingert Law Office, Spirit Lake, for appellant.

        Abby L. Walleck of Maahs & Walleck, Spirit Lake, for appellee.

        Michael L. Sandy, Spirit Lake, attorney and guardian ad litem for minor

children.

        Considered by Bower, C.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A father appeals the private termination of his parental rights to his three children.[1]  The children's mother petitioned for termination under Iowa Code chapter 600A after his most recent incarceration—for a federal drug conviction. The district court held that the father abandoned his children and that it was in their best interests to terminate the parental relationship.  The father now argues that the mother failed to prove abandonment—largely because he claims she prevented his contact with their children—and failed to show that termination is in the best interests of the children.  Because the mother proved that the father abandoned the children as defined by Iowa Code section 600A.8(3) and that termination of his parental rights is in the children's best interests, we affirm.

I.

The father and mother met when she began working at a fast-food restaurant at the age of fourteen.  The father—then nineteen—was her manager. They began a sexual relationship sometime after she turned fifteen, and about a year later in 2016, their oldest child was born.  The father had asked the mother to have an abortion because he was worried about getting in trouble.  But she refused.  And he was eventually convicted of third-degree sexual abuse for his conduct engaging in a sexual relationship with the mother when she was fifteen and he was five years older.  *See* Iowa Code § 709.4(1)(b)(2)(d) (criminalizing sex acts when the offender is "four or more years older than the other person").

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the district court's order—is public.  *Compare* Iowa Code § 600.16A (2022), *with id.* §§ 602.4301(2), 602.5110.

Around the time of that conviction, they conceived twin girls, who were born in February 2018. He missed their birth because he was in a residential treatment facility. But he met his daughters when they were three months old after returning to live with the children, the mother, and the mother's family. Almost immediately, he was reported to the Iowa Department of Human Services[2] as having used methamphetamine and marijuana and being under the influence while caring for the children. That incident resulted in a founded child abuse determination by the Department.

For these first couple of years after their oldest child was born, the father lived with the mother and their children "on and off" when he was not incarcerated. Sometimes they lived together in the homes of the maternal grandparents or the paternal grandmother and other times they had their own apartment. During their time together, the father was physically abusive to the mother but not the children. He regularly used drugs—as he later candidly acknowledged—picking drugs "over my kids and my family." And he had several couple-month stays serving time in jail or the residential treatment facility.

Then, in January 2019, the father tested positive for methamphetamine. This again resulted in a founded child abuse assessment and the filing of a child-in-need-of-assistance petition. According to the mother, the Department told her that it would seek removal of the children unless the father moved out of their home. So he did.

---

[2] The Department is now known as the Iowa Department of Health and Human Services.

The children were eventually adjudicated in need of assistance. They remained with the mother throughout the juvenile-court process, and the father was permitted supervised visitation. But the father was often late or had to cancel or reschedule. When the visitations did occur, the Department supervisor observed that the mother—who was always present to help at the father's request—was the primary caregiver in the visit and that the father appeared tired and more passive in his interactions. The last time the father saw the children in person was at one of these visits sometime in 2019.

In February 2020, the father was indicted on federal charges arising out of possessing and distributing methamphetamine near a park. He was arrested and has been incarcerated in county jails, state prison, or federal prisons since then. After conviction on the federal drug charges, the father was sentenced to serve more than seven years in prison with an expected release date of December 2027—though the father believes he will be released sooner.

While the federal criminal charges were pending, the child-in-need-of-assistance case was closed in August 2020. The juvenile court entered a bridge order, *see* Iowa Code § 232.103A, that granted the mother sole legal custody and physical care. It also authorized visitation by the father—supervised at first, and then increasing in responsibility and frequency after satisfying various treatment and behavioral criteria. The father has not participated in any visitation authorized by the order.

While incarcerated, the father has not provided any financial support for his children. The father made a handful of attempts to contact his children through phone and video calls and in writing. These calls occurred from May 2020 to

February 2021, but none took place after this. During one of the father's last calls, he told the children that it was their mother's fault that he could not talk to them more and that the two of them were not in a relationship. The mother then asked a Department worker for advice, and she was told that she did not have to make or receive any more calls from him because they were harmful for the children.

The father sent some letters and cards to the children in 2021. But that was the last written contact they received from him. After the mother relocated with the children, the father did not know her address. He sent cards and letters to his parents in hopes that they would deliver the mail to the mother. Yet they were never delivered.

The mother petitioned for termination of the father's parental rights in September 2022. She sought to terminate his parental rights on the grounds of abandonment under Iowa Code section 600A.8(3). At the bench trial in May 2023, the children's guardian ad litem recommended termination would be in their best interests.

In a thorough, seventeen-page ruling, the district court terminated the father's parental rights. The court found that he abandoned the children under section 600A.8(3) because of his lack of financial support, physical interaction, and minimal phone and mail communications for the past four years. And the court ruled that termination of the father's parental rights was in the children's best interests. The court reasoned:

> "[T]here is evidence in the record the children currently do not have a bond or relationship with [the father]. [The father] was not an active parent even prior to his incarceration. [The father] is not scheduled to be released from prison for another four and a half years. [The father] has not made an effort to affirmatively complete any duties of

being a parent since 2019, and only minimal effort prior to that time. As a result, [the father] has not maintained a place of importance in the children's lives. The amount of time in which [the father] has been absent from the children's lives is significant. The children have continued to develop and grow. The court is concerned, based upon [the father's] history and long periods with no contact with the children, as well as [the father's] choices of choosing his addiction over the children even after intervention of the Iowa Department of Human Services and juvenile court, this pattern would continue in the future.

The father timely appealed.

## II.

We review private termination proceedings under Iowa Code chapter 600A de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). We make our own fact findings but "give weight" to those of the trial court "especially when considering credibility of witnesses." *Id.* (citation omitted). Our primary concern is the best interests of the children, but the parents' interests "shall be given due consideration." Iowa Code § 600A.1(1); *see also In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). To terminate a parent's rights under chapter 600A, the moving party must prove a statutory ground for termination under section 600A.8 and show that termination is in the best interests of the child—both by clear and convincing evidence. *See B.H.A.*, 938 N.W.2d at 232.

The district court relied on the statutory ground of abandonment under section 600A.8(3). For a child who is at least six months old—like the three children here—that section provides that "a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child." Iowa Code § 600A.8(3)(b). That required contact must be "demonstrated by contribution toward support of the child of a reasonable amount,

according to the parent's means" and by any one of three means of contact: (1) visiting at a minimum monthly; (2) regular communication when unable to visit; or (3) "[o]penly living with" and "holding himself or herself out to be the parent of the child" during a six-month period in the year before the termination hearing. Iowa Code § 600A.8(3)(b)(1)–(3). These are two distinct components—an economic component and a contact component—both of which must be met "to avoid being deemed to have abandoned the child." *In re G.D.*, No. 20-0984, 2021 WL 2126174, at *3 (Iowa Ct. App. May 26, 2021). A parent's subjective intent "does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c).

Indeed, the mother has proven that the father has not satisfied either component for maintaining the required contact. While the father attacks the mother's credibility and argues she blocked his efforts to communicate with the children, his efforts were minimal as he did not take full advantage of his opportunities to contact the children. Since he last lived with the mother and her children in 2019, he has made no attempt to contribute toward support of the children. And since sometime later that same year—a period of nearly four years at the time of the trial—he has not visited monthly or had other regular communication.

The father has been incarcerated in both state and federal prisons for most of the children's lives. But the father "cannot use his incarceration as a justification for his lack of relationship with the child." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). While there were some phone and video calls early in the father's incarceration, even then they were limited. And after the mother stopped

cooperating with the calls, the father did not continue efforts to request calls or engage in other means of *regular* written communication. The cards he sent in 2021—the only written communication received by the children—do not satisfy that standard. Nor do written communications he sent to his parents that were never sent to the mother or children.

True, the father encountered some challenges in keeping in phone or written contact. But his minimal efforts to overcome those challenges and restart some communication for two years do not demonstrate "substantial and continuous or repeated contact" with his children. Iowa Code § 600A.8(3)(b). Especially so when—even before that—his contact with the children was limited. While communication between the parties was difficult at times, it was not impossible. This lengthy period of minimal contact rises to the level of abandonment. *See In re J.F.*, No. 22-1477, 2023 WL 3335328, at *1–2 (Iowa Ct. App. May 10, 2023) (finding that the father abandoned his child after extensive periods of incarceration and a failure to visit with or communicate with the child).

We also agree that termination of the father's parental rights is in the best interests of the three children. Section 600A.1 directs us to decide "whether a parent has affirmatively assumed the duties of a parent." Iowa Code § 600A.1(2); *see also B.H.A.*, 938 N.W.2d at 232. In making this decision, we consider—among other factors—"the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." Iowa Code § 600A.1(2). We "give primary consideration to the child's safety" and the best placement to encourage their long-

term nurturing and growth. *B.H.A.*, 938 N.W.2d at 232 (quoting Iowa Code § 232.116(2)). We likewise consider "the child's emotional and psychological health and the closeness of the parent–child bond." *Id.* (internal citation omitted).

The father focuses his best-interests-of-the-child argument on his contacts with the children along with his rehabilitation efforts, such as completing a sex offender treatment program and attending parenting and drug abuse programs. He also contends that the children will suffer without their father in their lives, as he can provide them with support and care.

While his good prison record and rehabilitation efforts are positive movements forward, the father has not embraced "the duties encompassed by the role of being a parent." Iowa Code § 600A.1(2). The cumulative efforts have not made an impact on the lives of the children. The record shows very limited, if any, ongoing parent–child bond. And given the young ages of the children, they barely know a life with their father in it. The mother testified that the children are healthy, performing well in school, and are succeeding in their life without the father. The children have the emotional support of their mother and the family of the mother with whom they reside. The interests of the children are best served by the termination of the father's parental rights. We thus affirm the district court's decision terminating the father's parental rights to his three children.

**AFFIRMED.**